G. C. BELKNAP *et al. v.* NEWLON F. SHOCK *et al.*

(No. 9418)

Submitted February 3, 1943. Decided February 23, 1943.

*Herbert M. Blair,* for appellant.

ROSE, JUDGE:

To a decree of the Circuit Court of Braxton County (a special judge sitting), by which the lien of a deed of trust securing a debt held by Roy Brown, was subordinated to certain subsequent judgments, we granted the trust creditor this appeal.

The appellant was the holder of certain notes dated December 16, 1939, and payable to himself at the Weston National Bank, Weston, West Virginia, and secured by two deeds of trust of the same date, one, covering two parcels of land in Braxton County, executed by Newlon F. Shock and wife, and the other, covering four parcels in that county, by Charles N. Shock and wife. Each of these trust deeds was acknowledged by the grantors before a notary public and was presented for admission to record in the office of the clerk of Braxton County December 23, 1939, and was spread on record as of that date. In this cause (a judgment lienor's suit), the commissioner to whom the cause was referred, reported the claim of the appellant as a lien on the land of the two Shocks superior in priority to certain subsequent judgments. Exceptions to this priority of plaintiff's claim were taken by a subsequent judgment lienor on the ground that the deeds of

trust by which appellant's notes were purported to be secured did not set forth the beneficial owner of the debt secured thereby, nor where he resided, as specifically provided in Chapter 88 of the Acts of the Legislature, Second Extraordinary Session, 1933 (Michie's 1937 Code, 39-1-2, serial number 3948). The appellant denies that the lien of his deeds of trust is affected by this statute.

Prior to the enactment of said Chapter 88, the sections of the statute important to be noted were as follows:

> "Instruments Recordable.—The clerk of the county court of any county in which any deed, contract, power of attorney, or other writing is to be, or may be, recorded, shall admit the same to record in his office, as to any person whose name is signed thereto, when it shall have been acknowledged by him, or proved by two witnesses as to him, before such clerk of the county court." Code 1931, 39-1-2.

> "Who May Take Acknowledgment.—Upon request of any person interested therein, such clerk of the county court shall also admit any such writing to record, as to any person whose name is signed thereto, upon a certificate of his acknowledgment before the president of a county court, a justice of the peace, notary public, * * *." Code 1931, 39-1-3.

Chapter 88 of the Acts of the Legislature of 1933, Second Extraordinary Session, enacted:

> "That section two, article one, chapter thirty-nine of the code of West Virginia, one thousand nine hundred thirty-one, be amended and re-enacted so as to read as follows:

> Section 2. The clerk of the county court of any county in which any deed, contract, power of attorney, or other writing is to be, or may be, recorded, shall admit the same to record in his office, as to any person whose name is signed thereto, when it shall have been acknowledged by him, or proved by two witnesses as to him, before such clerk of the county court.

But notwithstanding such acknowledgment or proof, such clerk shall not admit to record any contract, deed, deed of trust, mortgage or other instrument that secures the payment of any debt, unless such contract, deed, deed of trust, mortgage, or other instrument sets forth therein who, at the time of the execution and delivery thereof, is the beneficial owner of the debt secured thereby, and where he resides: *Provided, however,* That in the case of a mortgage or a deed of trust securing an issue of negotiable notes or bonds exceeding five in number and payable to bearer, it shall not be necessary that the mortgage or deed of trust show who are the beneficial owners of such notes or bonds, but in such case such mortgage or deed of trust shall show the name and address of the person or corporation with or by whom the notes or bonds have been, or are to be, first negotiated.

All acts or parts of acts inconsistent with this act are hereby repealed."

The title of this act reads as follows:

"AN ACT to amend and reenact section two, article one, chapter thirty-nine of the code of West Virginia, one thousand nine hundred thirty-one, specifying what instruments are recordable."

It will thus be seen that by its title, its enacting clause and its content this act was directed solely to section two, article one, chapter thirty-nine of the Code as it theretofore stood. That section, despite the "catchwords" prefixed thereto, merely commanded a county clerk to admit to record in his office certain named writings, when acknowledged or proven before him. It is common knowledge that extremely few recordable instruments are actually so acknowledged or proven. Authentication of instruments for record is almost universally done under the following section (Code, 39-1-3), which provides that such clerk shall also admit the same writings to record in his office when acknowledgment thereof is certified by anyone of a score of other public officials. The deeds of

trust of the appellant were each acknowledged before a notary public, not before the clerk of the county court, and, therefore, are controlled by section 3. We, therefore, must determine whether this section is affected by the amending and repealing provisions of Chapter 88, aforesaid. That amendment, so far as internal evidence discloses, by every test that occurs to us, plainly, indubitably and repeatedly applies, and was intended to apply, to section 2 only. In its direct and express language it refers to and affects only such instruments as are acknowledged or proved before the clerk, and not to those otherwise authenticated for recordation. If the duty of a clerk to admit to record an instrument acknowledged under section 3 is modified by this amendment, this result must arise, not directly, but by implication, or as a necessary incident to the thing expressly done by the act.

Repeal or amendment by implication is not favored by law. *Sale v. Board of Education,* 119 W. Va. 193, 192 S. E. 173; *Vinson v. County Court,* 94 W. Va. 591, 119 S. E. 808; *Beck v. Cox,* 77 W. Va. 442, 87 S. E. 492; *Kimball v. Loughney,* 70 W. Va. 765, 74 S. E. 953; *Clemans v. Board of Education,* 68 W. Va. 298, 69 S. E. 808; *State v. Enoch,* 26 W. Va. 253; *Forqueran v. Donnally,* 7 W. Va. 114. Of course, a legislative act generally modifies, amends or repeals some former law, else it would have no purpose and no effect. But, unless so expressly stipulated in the amending or repealing act, the new statute will not be treated as affecting former statutes, except for unavoidable necessity. Where the statute to be amended or repealed is directly and specifically pointed out in the new enactment, no wider scope will be implied, if any other reasonable conclusion can be maintained. *Matheny v. White,* 88 W. Va. 270, 106 S. E. 651; *First National Bank v. De Berriz,* 87 W. Va. 477, 105 S. E. 900; *Ex Parte James Watson,* 82 W. Va. 201, 95 S. E. 648; *Kelly & Moyers v. Bowman,* 68 W. Va. 49, 69 S. E. 456.

Scrutiny of the act reveals that, by the ordinary devices commonly used in legislative enactments, this Chapter 88 was directed and limited expressly to section 2 only. The title so says; the enacting clause so says; by the very

language of the body of the act this limitation or restriction unequivocally appears. The amendment is, in fact, nothing but an exception engrafted upon the preceding paragraph. The clerk, under the amendment, is required to admit to record in his office all of the enumerated writings, which have been acknowledged or proved before him, except such as do not set forth the names and residences of the beneficial owners of any debts secured thereby. Nothing in the act pretends to deny recordation to such instruments acknowledged before other officials, whatever they may contain or fail to contain.

No explanation for this discrimination appears in the act, but we note that section 2 carries the catchwords "Instruments Recordable", a title which is entirely too broad. It is possible that the draftsman of the amending act assumed that these catchwords correctly defined the content of the section, and, further, that he assumed that by amending this section, the whole law relating to the admission of instruments to record would be affected. In this he was simply in error. "The sectional headings or headlines of the several sections of this Code printed in black faced type are intended as mere catchwords to indicate the contents of the section and shall not be deemed or taken to be titles of such sections, or as any part of the statute, and, unless expressly so provided, they shall not be so deemed when any of such sections, including the headlines, are amended or reenacted." Code, 2-2-10 (z). We must deal with the statute as it stands. It is useless to speculate as to why it was so written. Nor dare we attempt to correct possible errors. The restriction of the amendment to section 2 is so complete and unequivocal that no power inheres in this Court to extend its effect to any other statute by implication.

We are not overlooking the last sentence of the amendatory act: "All acts or parts of acts inconsistent with this act are hereby repealed." This sentence is a part of the very substance of the act, and must be given effect precisely as any other part. But observe the exact words used. No act or part of an act is repealed except such as are "inconsistent" with the new enactment. The word

"inconsistent" when so used is not to be loosely construed. It does not mean merely, inharmonious, inappropriate, illogical, unsymmetrical, but connotes impossibility of concurrent operative effect. To be automatically repealed by a subsequent statute, the two acts must be so conflicting that their common survival is a legal impossibility, or that only one can be in force at a given time. The two laws must be so antagonistic that they cannot co-exist. Two antithetical statutes cannot cover the same subject matter at the same time. One must yield to the other from sheer necessity, and by universal practice, the later in time is held to prevail. Thus the inconsistency which will result in the abrogation of one statute by another must be such as will make it impossible as a matter of law that they can both be effective. *Bodkin* v. *State,* 132 Neb. 535, 272 N. W. 547; *Oakland* v. *Board of Conservation,* 98 N. J. L. 99, 118 A. 787; *The State* v. *Giant's Neck Land & Improvement Co.,* 116 Conn. 119, 163 A. 651; *Dugger* v. *Board of Supervisors,* 139 Miss. 552, 104 So. 459; *Lasater* v. *Lopez,* 110 Tex. 179, 217 S. W. 373. The rule is the same whether the repeal of an inconsistent statute is express or implied. Hence, the addition of a repealer provision in a legislative act is generally held to add nothing to its efficacy. *United States* v. *Henderson,* 11 Wall. 652, 20 L. Ed. 235; *People* v. *Lowell,* 250 Mich. 349, 230 N. W. 202; *Hessick* v. *Moynihan,* 83 Colo. 43, 262 P. 907; *Price* v. *Fox,* 220 Ky. 373, 295 S. W. 433; *Casterton* v. *Vienna,* 163 N. Y. 368, 57 N. E. 622; *Woodmont Asso.* v. *Town of Milford,* 85 Conn. 517, 84 A. 307; *People* v. *City of Rock Island,* 271 Ill. 412, 111 N. E. 291; *Commonwealth* v. *City of Pottsville,* 246 Pa. 468, 92 A. 639; *Batchelor* v. *Palmer,* 129 Wash. 150, 224 P. 685; *Ex Parte Clary,* 149 Cal. 732, 87 P. 580; *City of Memphis* v. *Am. Express Co.,* 102 Tenn. 336, 52 S. W. 172.

At any rate, we cannot perceive how any effect can be given to these words in the statute under consideration. There is no legal inconsistency between section 3, as it now stands, and section 2, after it was amended. Section 3, not being an inconsistent statute, is not affected, either expressly or by implication by the amendment. However strange, from the standpoint of logic or propriety, it may

seem, a legislature has the legal power to enact that an instrument acknowledged or proved before a clerk shall not be admitted to record, but that the same instrument acknowledged before a notary public shall be admissible. The wisdom of such a distinction may be questioned, but there is no legal impossibility that the two statutory provisions may be operative simultaneously. They may be rationally and equitably incongruous, but they are not "inconsistent" from a legal standpoint, and the repealer sentence applies only to such acts or parts of acts as are thus inconsistent from the standpoint of law. So long as the two provisions can both actually operate as laws, they are not legally inconsistent. We may add that, if the repealing sentence of the statute is to be given a broader application than would naturally flow from the amendment, a serious question would arise whether it would not then be outside the title of the act.

We conclude, therefore, that inasmuch as the deeds of trust in question were acknowledged and admitted to record under the provisions of section 3, they are wholly unaffected by section 2 and the amendment thereof, and the lien created thereby should have taken priority as reported by the commissioner. Accordingly, the decree appealed from is reversed in so far as it fails to give the lien securing appellant's debt this priority, and this cause is remanded for further proceedings.

*Reversed and remanded.*